IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **JOSEPH WARD,** on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SENIOR CARE CENTERS, LLC**, a foreign corporation,<br><br>Defendant. | Case No. 5:17-cv-00422 |

## COLLECTIVE ACTION COMPLAINT AND JURY DEMAND

Plaintiff JOSEPH WARD, by and through his attorneys DEAN OMAR AND BRANHAM, LLP, and THE JTB LAW GROUP, LLC, as and for his complaint against SENIOR CARE CENTERS, LLC, a foreign corporation, alleges as of his own knowledge as to his actions and observations, and as of information and belief as to all other matters, as follows.

## PRELIMINARY STATEMENT

1. This case arises out of the persistent and willful failure of Defendant SENIOR CARE CENTERS, LLC ("Senior Care"), to properly compensate Plaintiff JOSEPH WARD ("Ward"), a Licensed Vocational Nurse and a former employee of Defendant, and other similarly situated current and former employees.

2. Specifically, Senior Care allowed and/or required Ward and others to work "off the clock," without compensation, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA").

3. All or virtually all of this off-the-clock time should have been paid at an overtime premium, *i.e.*, 1½ times the regular rate of pay.

4. By reason of Defendant's persistent and willful violations of the FLSA, Ward and other current and former employees of Senior Care were and are illegally underpaid for their work.

5. Ward also asserts FLSA claims pursuant to 29 U.S.C. § 216(b) on behalf of other similarly situated current and former employees of Defendant who were and are affected by Defendant's policy of not properly paying its employees for all hours worked.

6. For at least three years prior to the filing of this Complaint, Defendant willfully and intentionally violated the above-described federal wage and hour statutes and regulations, in the manner described herein.

7. Ward brings this action to recover monetary damages, liquidated damages, statutory penalties, interest and costs, including reasonable attorney's fees, on his own behalf and on behalf of all others similarly situated, as a result of these willful violations of the FLSA.

8. Ward also brings individual claims for wrongful termination, in violation of;

   a. the Regulations of the Texas Board of Nursing, Title 22, Part 11 of the Texas Administrative Code, and Chapter 303, the Nursing Peer Review provisions of the Texas Occupational Code; and

   b. the anti-retaliation provision of the FLSA, 29 U.S.C. § 215(a)(3).

9. Specifically, Ward was terminated after raising concerns about Senior Care's provision of care to its patients, despite his having invoked the "Safe Harbor" provisions of 22 Tex. Admin. Code § 217.20, which are designed to protect whistleblowers from retaliation.

10. In Ward's Safe Harbor Request he also raised the issue of having to work off-the-clock. His termination shortly thereafter was, at least in part, in retaliation for having complained about that issue and was thus in violation of the anti-retaliation provision of the FLSA.

11. Ward brings his claim under Tex. Occ. Code § 301.413 for actual and exemplary damages, court costs, reasonable attorney's fees, severance pay equal to three months at his last rate of pay, and compensation for wages lost since his termination.

12. Ward brings his claim under 29 U.S.C. § 215(a)(3) for lost wages, liquidated damages, punitive damages, interest and costs, including reasonable attorney's fees, pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action is brought for violations of the FLSA, a federal statute.

14. This Court has supplemental subject matter jurisdiction of the claims under Texas law pursuant to 28 U.S.C. § 1367.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)(2), because all or substantially all of the events and omissions that give rise to this claim occurred in this District.

## THE PARTIES
### *Plaintiff*

16. At all relevant times, Plaintiff JOSEPH WARD was a resident of Bexar County, State of Texas. He is currently a resident of Guadalupe County.

17. Ward is a Licensed Vocational Nurse ("LVN"), holding license #303131 from the Texas State Board of Nursing.[1]

18. Ward was employed by Senior Care from October 7, 2015 through July 7, 2016.

19. Ward worked as a Charge Nurse at Senior Care's Mesa Vista Inn Health Center, located at 5756 N. Knoll, San Antonio, Texas 78240.

---

[1] *See* https://www.bon.texas.gov/forms/vlicform.asp?licnumber=303131, last accessed May 11, 2017.

3

20. Ward was an "employee" of Senior Care within the meaning of 29 U.S.C. § 203(e), and is entitled to the protections of the FLSA.

21. Ward's written consent to participate in this action, pursuant to 29 U.S.C. § 216(b), is attached hereto as **Exhibit A**.

*Defendant*

22. Defendant SENIOR CARE CENTERS, LLC, is a business corporation organized and existing under the laws of the State of Delaware, with corporate headquarters at 600 N. Pearl Street, Suite 1100, Dallas, Texas 75201, and an address for service of process c/o Paracorp Incorporated, 2140 S. Dupont Highway, Camden, Delaware 19934.

23. Senior Care operates skilled nursing and rehabilitation, assisted living, and Alzheimer's memory-care facilities.

24. On information and belief, Senior Care operates more than ninety such facilities in Texas and Louisiana.

25. Senior Care operates the Mesa Vista Inn Health Center ("MVI").

26. According to its website, MVI is a 144-bed facility that "provides state-of-the-art rehabilitation with 24-hour skilled nursing services," including both "short-term rehab so a resident can quickly return home [and] more long term care for complex cases."[2]

27. Senior Care is an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)(2)(A) and (s)(1)(B), and is thereby covered by the provisions of the FLSA.

28. Senior Care regularly employs, hires or contracts for the services of ten or more nurses at MVI.

---

[2] *See* http://mesavista.seniorcarecentersltc.com/about-mesa-vista-inn-health-center/, last accessed May 11, 2017.

4

# FACTUAL ALLEGATIONS
*Facts Pertinent to Plaintiff's Individual and Collective FLSA Claims*

29. Plaintiff Ward repeats and re-alleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

30. Ward was employed by Senior Care from October 7, 2015 through July 7, 2016 as a Charge Nurse, working at MVI.

31. Ward was paid on an hourly basis.

32. When he was hired, Ward's regular hourly rate of pay was $24.00 and his overtime rate was $36.00.

33. At the time of his termination, Ward's regular hourly rate of pay was $24.17 and his overtime rate was $36.26.

34. Ward was typically scheduled to work from 1:45 until 10:15 p.m.

35. Ward worked these hours on a four days on, two days off schedule.

36. As a Charge Nurse for his shift, Ward typically had responsibility for between twenty and twenty-five residents. Their needs ranged from standard long-term care, to acute post-hospitalization rehabilitation, to Alzheimer's care.

37. At the time he was hired, Senior Care, acting through MVI, required Ward and its other employees to clock out for a half-hour unpaid lunch each workday. In approximately February 2016, the unpaid lunch break was changed to one hour.

38. However, Ward had to work through his unpaid lunch period (whether a half hour or a full hour) almost every day, with the full knowledge of his supervisors, in order to stay abreast of the required paperwork.

39. He would clock out for lunch but work through his lunch period, and then clock back in to finish his shift.

40. Ward also frequently would have to continue to do paperwork after clocking out at the end of his shift, in order not to fall behind.

41. Ward estimates that, altogether, he worked between two and three hours each workday for which he was not paid.

42. Senior Care, acting through MVI, required Ward and other nurses to take ten to fifteen hours of online training each month.

43. This online training was a requirement to maintain employment with MVI, although some of the credits were applicable towards the continuing-education requirements imposed by the state to maintain a nursing license.

44. Senior Care, acting through MVI, allowed staff to complete their online training requirements during work hours. However, because of his heavy patient load and other responsibilities, Ward was rarely able to work on his continuing education requirements during his regular day, and would have to use time outside of his scheduled work hours.

45. Ward was not paid for the time he was required to use for continuing education outside of his scheduled work hours.

46. All or virtually all of Ward's off-the-clock time was in excess of his regular forty-hour workweek.

47. Ward should have been paid at his overtime rate for all or virtually all of his off-the-clock time.

48. By these policies and practices, Defendant violated the FLSA and its accompanying regulations.

49. From his tenure at MVI, Ward knows of other MVI employees who were similarly allowed or required to work off the clock.

50. On information and belief, some current MVI employees are similarly allowed or required to work off the clock.

51. These other current and former employees also should have been paid at their overtime rates for all or virtually all of the off-the-clock time they worked.

52. Ward has reason to believe that employees at other locations operated by Senior Care were and are similarly allowed or required to work off the clock.

53. At all relevant times, Ward and these other employees were and are similarly situated, in that they were and are subjected to Senior Care's common policies of failing to pay their non-exempt employees as required under the FLSA.

54. Ward therefore brings his FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of himself and all other similarly situated current and former employees of Senior Care within the applicable statutory period.

55. The proposed FLSA Collective is defined as:

**<u>ALL HOURLY EMPLOYEES OF SENIOR CARE CENTERS, LLC, AT ANY TIME WITHIN THE THREE YEARS PRIOR TO THE FILING OF THIS COMPLAINT</u>**
*Facts Pertinent to Plaintiff's Wrongful Termination Claims*

56. Plaintiff Ward repeats and realleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

57. During Ward's shift on June 23, 2016, a new admission was assigned to the "A Wing" at MVI, where Ward was the Charge Nurse.

58. This new admission was particularly "acute" – *i.e.*, requiring a high level of care and attention from Ward and the rest of the staff.

59. At that time, nine of the forty-one residents already on the wing were similarly acute.

7

60. Also at that time, there were only two Certified Nurse's Assistants ("CNAs") and one other nurse (in addition to Ward) on duty for all forty-one residents on the wing.

61. Using his professional experience and judgment, Ward determined that he could not accept assignment of this new resident without jeopardizing his ability to care for all the residents.

62. Tex. Occ. Code § 303.0015 requires an employer of ten or more nurses to permit a nurse to request Safe Harbor Peer Review ("Safe Harbor") when the nurse is requested or assigned to engage in conduct that the nurse believes is in violation of his/her duty to a patient.

63. Safe Harbor "protects a nurse from employer retaliation, suspension, termination, discipline, discrimination, and licensure sanction when a nurse makes a good faith request for peer review of an assignment or conduct the nurse is requested to perform and that the nurse believes could result in a violation of the [Nursing Practice Act, Chapter 301 of the Tex. Occ. Code] or [Texas Board of Nursing] rules." 22 Tex. Admin. Code § 217.20(a)(15).

64. A nurse who wants to invoke Safe Harbor must do so "prior to engaging in the conduct or assignment [to which he/she objects] and at any of the following times: (A) when the conduct is requested or assignment made; (B) when changes occur in the request or assignment that so modify the level of nursing care or supervision required compared to what was originally requested or assigned that a nurse believes in good faith that patient harm may result; or (C) when the nurse refuses to engage in the requested conduct or assignment." *Id.* at (d)(1).

65. The nurse must notify the supervisor requesting the conduct or assignment that the nurse is invoking Safe Harbor, using a writing that "at a minimum includes the following: (i) the nurse(s) name making the safe harbor request and his/her signature(s); (ii) the date and time of the request; (iii) the location of where the conduct or assignment is to be completed; (iv) the

name of the person requesting the conduct or making the assignment; and (v) a brief explanation of why safe harbor is being requested." *Id.* at (d)(2), (3).

66. Plaintiff Ward timely submitted such a writing to Cindy Weaver, MVI's Director of Nursing and his supervisor. A copy is attached hereto as **Exhibit B**.

67. In that writing, Ward noted that accepting the new admission would leave him unable to provide "adequate patient care and a safe environment, given the current patient dynamic and a severely diminished staff." *Id.*

68. Before leaving work that day, Ward submitted a "Comprehensive Written Request For Safe Harbor Peer Review," as required by 22 TAC 217.20(d)(4) to perfect his request for Safe Harbor. The form is attached hereto as **Exhibit C**.

69. In that form he described how he was

> expected to provide nursing service, monitor, follow up with doctors and families; provide CNA services due to lack of staff, answer telephones, pass food trays and feed patients, as well as repeatedly open and close doors after 8:00 pm – with staff of 2 LVNs and 1-2 CNAs during the 2-10 shift.

*Id.*

70. In that same form, Plaintiff wrote further:

> Pursuant to the Texas Board of Nursing Standards of Practice, I do not believe it is appropriate, nor am I capable to provide a reasonably acceptable level of care to my patients.
>
> Given the census of 41, approximately 9 skilled [*i.e.*, approximately nine of the 41 residents required additional care], a significant number that mandate more nursing intervention and coverage by 2 LVNs and 2 CNAs is not reasonable and prudent.
>
> To coincide with nursing cares [*sic*] of a routine nature, we are expected to perform admissions, discharges, answer our own phones/pages; follow up with families and doctors, monitor precarious situations *i.e.* fall risks, elopement risks, agitation.

9

> And we are expected to repeatedly get our own supplies from a distant supply room, open and close security doors.
>
> Not to mention expectations also include doing all of these things among others – charting daily, VS, med orders all within 7 hours, ***where we frequently clock out and work because of fear of reprimand***.
>
> Recent policies including monitoring for elopement, monitoring CNA showers, body audits and various ongoing delegated tasks including admits all while understaffed.

*Id* (emphasis added).

71. On the afternoon of June 29 – six days after invoking Safe Harbor – Ward was on duty, delivering medications to residents. DeParis Stokes, an Assistant Director of Nursing, walked past and said words to the effect of "some people think [they] don't have to be a team player." *See* notes of Thelma Martinez, MVI Administrator, attached hereto as **Exhibit D**;[3] *see also* Letter, Joseph Ward to Thelma Martinez, June 30, 2016, attached hereto as **Exhibit E**.

72. As an Assistant Director of Nursing, Stokes was a member of Senior Care's management team at MVI.

73. According to Martinez's signed notes,

> DeParis went into a resident room and when DeParis came out of resident room, [Plaintiff] Joseph [Ward] asked DeParis "if that was meant for me" not knowing if it was or if he was referring to someone else. DeParis then turned around around [*sic*] & fast walked to Joseph and came up to him & hit him chest to chest. DeParis then said something (uncertain of exact words) and walked away.

**Exhibit D**.

74. Ward called the police shortly after the confrontation, and gave a report.

75. Two days later, on July 1, Ward received a written "final warning" related to this incident. *See* Letter, Joseph Ward to Thelma Martinez, July 1, 2016, attached hereto as **Exhibit F** (referring to same)**.**

---

[3] The exhibit is a copy of notes Martinez made during an interview she conducted with Plaintiff Ward a few minutes after the incident described.

76. On July 7, Ward was notified by telephone that the Peer Review Committee convened by MVI to review Ward's June 23 Safe Harbor complaint had determined that his concerns were "unfounded." *See* Letter, Joseph Ward to Thelma Martinez, July 7, 2016, attached hereto as **Exhibit G**.

77. On information and belief, the Peer Review Committee was composed mostly, if not entirely, of Directors of Nursing and other nursing management personnel from other facilities operated by Senior Care Centers, LLC, the very company that operates MVI. These Committee members thus had an obvious interest in the Committee's ultimate decision. *See id.*

78. Under Tex. Occ. Code § 303.003, "A nursing peer review committee that conducts a peer review that involves the practice of vocational nursing, to the extent feasible, must include vocational nurses as members and may have only registered nurses and vocational nurses as voting members," and "shall include to the extent feasible at least one nurse who has a working familiarity with the area of nursing practice in which the nurse being reviewed practices." *Id.* at (a), (b).

79. Ward does not know whether the Committee that reviewed him complied with these membership requirements.

80. On July 7, 2016, the same day on which he was informed of the Peer Review Committee's decision, Ward was terminated. *See* Confidential Employee Corrective Action Form, July 7, 2016, attached hereto as **Exhibit H**.

81. On the termination form it was alleged that Ward had left his medication cart "unlocked and unattended" on separate occasions on July 5 and July 6. *Id.*

82. At the time of Ward's termination, **all three** of his most recent write-ups – one for the "verbal altercation" with Stokes and two for allegedly leaving his medication cart unlocked –

had come *after* Ward invoked Safe Harbor to report what he considered to be unsafe working conditions that compromised care of the residents at MVI.

83. Senior Care, acting through MVI, terminated Ward after he invoked Safe Harbor Peer Review, and after he complained about having to "frequently clock out and work because of fear of reprimand." **Exhibit C**.

## COUNT I: INDIVIDUAL FLSA VIOLATION

*29 U.S.C. §§ 206, 207, 216(b) – Failure to Pay Proper Compensation*

84. Plaintiff repeats and realleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

85. At all relevant times, Senior Care has been an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)(2)(A) and (s)(1)(B), and has therefore been covered by the provisions of the FLSA.

86. At all relevant times, Ward was a non-exempt employee of Senior Care and was therefore covered by the provisions of the FLSA.

87. The FLSA requires covered employers to pay covered employees at least the federal minimum wage for all time they are required or allowed to work. *See* 29 U.S.C. § 206.

88. In addition, the FLSA and its accompanying regulations make clear that:

   a. mealtimes are to be counted and paid as hours worked unless the employee is "completely relieved from duty for the purposes of eating regular meals." *See* 29 CFR § 785.91(a); and

   b. time spent by employees at training programs outside of regular work hours is to be counted and paid as hours worked where attendance is not voluntary. *See* 29 CFR §§ 785.27-.28.

89. Senior Care failed to pay Ward at least the federal minimum wage for all hours worked, as required under the FLSA.

90. Moreover, the FLSA requires covered employers to pay covered employees at a rate of 1½ times their regular rate of pay for all time worked in excess of forty hours in a workweek. *See* 29 USC § 207.

91. Senior Care failed to pay Ward at a rate of 1½ times his regular rate of pay for all time worked in excess of forty hours in a workweek, as required under the FLSA.

92. Senior Care's conduct and practices, described herein, were willful, intentional, unreasonable, arbitrary and in bad faith.

93. Because Senior Care willfully violated the FLSA, a three-year statute of limitations applies to such violation, pursuant to 29 U.S.C. § 255.

94. As a result of the foregoing, Plaintiff Ward was illegally denied proper compensation earned, in such amounts to be determined at trial, and is entitled to recovery of such unpaid compensation, liquidated damages, costs, reasonable attorney's fees, and other compensation pursuant to 29 U.S.C. § 216(b).

**COUNT II: COLLECTIVE FLSA VIOLATION**

*29 U.S.C. §§ 206, 207, 216(b) – Failure to Pay Proper Compensation*

95. Plaintiff repeats and realleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

96. At all relevant times, Senior Care employed Plaintiff Ward and members of the putative collective within the meaning of the FLSA.

97. Ward and members of the putative collective were and are non-exempt employees within the meaning of the FLSA.

98. Senior Care failed to pay Ward and members of the putative collective at least the federal minimum wage for all hours worked, as required under the FLSA.

99. Senior Care also failed to pay Ward and members of the putative collective at their overtime rates for all time worked in excess of forty hours in a workweek, as also required under the FLSA.

100. Senior Care's conduct and practices, described herein, were/are willful, intentional, unreasonable, arbitrary and in bad faith.

101. Because Senior Care willfully violated the FLSA, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

102. As a result of the foregoing, Plaintiff Ward and members of the putative collective were illegally denied proper compensation earned, in such amounts to be determined at trial, and are entitled to recovery of such unpaid compensation, liquidated damages, prejudgment interest, costs, reasonable attorney's fees and other compensation pursuant to 29 U.S.C. § 216(b).

### **COUNT III: INDIVIDUAL TEXAS STATE LAW VIOLATION**

*22 Tex. Admin. Code § 217.20(a)(15) – Termination in Violation of Safe Harbor Provisions*

103. Plaintiff repeats and realleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

104. Senior Care regularly employs, hires or contracts for the services of ten or more nurses at MVI.

105. On June 23, 2016, Plaintiff Ward refused an assignment from his supervisor at MVI, because in his professional judgment, accepting the assignment would have jeopardized his ability to provide adequate care to the patients in his charge.

106. In doing so, Ward requested a Safe Harbor Peer Review, pursuant to 22 Tex. Admin. Code § 217.20 and Chapter 303 of the Tex. Occ. Code.

107. Safe Harbor "protects a nurse from employer retaliation, suspension, termination, discipline, discrimination, and licensure sanction when a nurse makes a good faith request for peer review of an assignment or conduct the nurse is requested to perform and that the nurse believes could result in a violation of the [Nursing Practice Act, Chapter 301 of the Tex. Occ. Code] or [Texas Board of Nursing] rules." 22 Tex. Admin. Code § 217.20(a)(15).

108. Ward made a timely and procedurally proper request for Safe Harbor Peer Review.

109. Two weeks after his request, Ward was notified that MVI's Peer Review Committee, most if not all of whose members were Directors of Nursing from other facilities operated by Defendant Senior Care Centers, LLC, had determined that his concerns were unfounded.

110. The same day that Ward found out about the Committee's decision he was terminated.

111. The reasons presented by MVI for that termination were pretextual.

112. Ward was actually fired in retaliation for having raised concerns about the adequacy of patient/resident care at MVI. His firing was thus in direct violation of the Safe Harbor provisions of the Tex. Admin. Code and the Tex. Occ. Code.

113. Tex. Occ. Code § 301.413 provides a right of action for retaliatory discipline for requesting Safe Harbor review.

114. As a result of the foregoing, Plaintiff Ward was wrongfully terminated, and is entitled to recover: the greater of $5,000.00 or actual damages, including damages for mental anguish; exemplary damages; court costs; reasonable attorney's fees; severance pay in an amount

equal to three months at Ward's last hourly rate; and compensation for wages lost during the period of suspension or termination.

## COUNT III: INDIVIDUAL FLSA VIOLATION

*29 U.S.C. §§ 215(a)(3), 216(b) – Retaliatory Termination*

115. Plaintiff repeats and realleges all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

116. On June 23, 2016, Ward submitted a "Comprehensive Written Request For Safe Harbor Peer Review." **Exhibit C**.

117. In that submission, Ward noted that he and his co-workers "frequently clock out and work because of fear of reprimand." *Id.*

118. 29 U.S.C. § 215(a)(3) makes it illegal "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint … under or related to [the FLSA]."

119. Ward's Request For Safe Harbor Peer Review is a "complaint" for purposes of 29 U.S.C. § 215(a)(3).

120. Ward was terminated on July 7, 2016, two weeks after submitting his Request For Safe Harbor Peer Review.

121. Senior Care knew or should have known that the FLSA prohibits retaliation against an employee for filing a complaint regarding his employers' pay practices.

122. Senior Care's termination of Ward, as alleged herein, was not in good faith, or in conformity with or reliance on any written administrative regulation, order, ruling, approval, or interpretation by the U.S. Department of Labor and/or the Texas Workforce Commission, or any administrative practice or enforcement policy of either such department.

123. Senior Care's above-described violation of the FLSA was willful, arbitrary, unreasonable and in bad faith.

124. As a result of the foregoing, Ward was illegally deprived of wages he could have earned, in such amounts as may be determined at trial, and is entitled to recovery of those lost wages, liquidated damages, punitive damages, interest and costs, including reasonable attorney's fees, pursuant to 29 U.S.C. § 216(b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

(A)  A declaratory judgment that Defendant's practices alleged herein violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, and related regulations.

(B)  An order requiring Defendant to end all of the practices alleged herein to be illegal under the FLSA and related regulations.

(C)  An Order pursuant to 29 U.S.C. § 216(b), certifying a collective comprised of all hourly employees of Senior Care at any time within the three years prior to the filing of this Complaint.

(D)  An order directing Defendant, at its own expense, to investigate and account for the number of hours actually worked by Plaintiff and all members of the putative collective.

(E)  Judgment to Plaintiff and all members of the collective for damages for all unpaid compensation pursuant to 29 U.S.C. § 216(b).

(F)  Judgment for liquidated damages pursuant to 29 U.S.C. § 216(b) in an amount equal to all unpaid compensation owed to Plaintiff and all members of the collective during the applicable statutory period.

(G)  An order directing Senior Care to pay prejudgment interest to Plaintiff and all members of the collective, along with reasonable attorney's fees and all costs connected with this action.

(H)  An Incentive Award for Plaintiff.

(I)  Judgment for any and all other recovery to which Plaintiff and all members of the collective may be entitled under the FLSA.

(J) Judgment for the greater of Plaintiff's actual damages or $5,000; exemplary damages; court costs; reasonable attorney's fees; severance pay in an amount equal to three months at Plaintiff's last rate of pay; and compensation for wages lost since Plaintiff's termination, pursuant to Tex. Occ. Code § 301.413.

(K) Such other and further relief as this Court may deem necessary, just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all questions of fact raised by the Complaint.

Dated: May 11, 2017

Respectfully submitted,
**DEAN OMAR & BRANHAM, LLP**
By: */s/ Charles W. Branham, III*
Charles W. Branham, III
Texas Bar No. 24012323
302 N. Market St., Ste. 300
Dallas, Texas 75202
(214) 722-5990 (office)
(214) 722-5991 (fax)
*tbranham@dobllp.com*

*and*

**JTB LAW GROUP, LLC**
By: */s/ Patrick S. Almonrode*
Patrick S. Almonrode
*pro hac vice application forthcoming*
Jason T. Brown
*pro hac vice application forthcoming*
155 2nd Street, Suite 4
Jersey City, NJ 07302
(877) 561-0000 (office)
(855) 582-5297 (fax)
*patalmonrode@jtblawgroup.com*
*jtb@jtblawgroup.com*
***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2017 a true and correct copy of the foregoing document was filed via ECF.

/s/ *Charles W Branham, III*
Charles W Branham, III